UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| LOCK REALTY CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:06-CV-487 RM |
| | ) | |
| U.S. HEALTH LP, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

On October 3, 2006, Plaintiff Lock Realty Corporation (Lock) filed a motion to enjoin sales or attach proceeds.  On October 4, 2006, this matter was referred to the undersigned to conduct such proceedings as necessary to enter a report and recommendation.  On October 18, 2006, Defendants U.S. Health LP, Larry New, John Bartle, Rebecca Bartle, and Americare Living Centers III LLC (collectively "U.S. Health") filed their response.  On October 19, 2006, this Court held a hearing and considered the evidence and arguments from counsel.  This Court also gave U.S. Health the opportunity to submit supplemental evidence and arguments, which they did on October 26, 2006.  On October 31, Lock filed its reply.  The following Report and Recommendation is based upon the record of this case which includes the pleadings, the motions, and briefs of the parties, as well as the evidence developed at the hearing, filings, and the arguments of counsel.

**I.    PROCEDURAL HISTORY**

Currently, there are two cases in this Court that are nearly identical and involve the same parties.  While the current dispute centers around a motion in the second lawsuit, many of the

facts that are relevant to the current analysis stem from the facts and circumstances of the previous lawsuit.

  A.  <u>3:05-CV-715 RM (Lock 1)</u>

In <u>Lock 1</u>, Lock filed a lawsuit against U.S. Health based on a breach of contract, specifically a lease. On June 21, 2006, following a settlement a judgment was finally entered in favor of Lock. However, on August 31, 2006, Lock filed a motion to alter judgment seeking to add a defendant. Lock claimed that U.S. Health had unlawfully assigned the lease to Defendant Americare III LLC (Americare). As a result, Lock sought to have Americare added as a defendant and to have the previous judgment enforced against Americare as well.

On September 25, 2006, Chief Judge Miller granted Lock's motion to amend the judgment against U.S. Health. Chief Judge Miller found that it was appropriate to add Americare as a defendant because Lock had shown that U.S. Health failed to disclose that the lease had been assigned to Americare and because U.S. Health and Americare were essentially a single business enterprise.[1] Lock had also produced evidence that U.S. Health was using some 83 entities as a means of sheltering the entire enterprise from liability. As of this date, U.S. Health still has not satisfied this judgment, which is in excess of approximately $485,000.

  B.  <u>3:06-CV-487 (Lock 2)</u>

On August 8, 2006, Lock filed a second lawsuit against U.S. Health ("<u>Lock 2</u>"). <u>Lock 2</u> involved the same parties, the same lease, and nearly the same legal issues as <u>Lock 1</u>. However, Lock's cause of action in <u>Lock 2</u> is based on a breach of the lease that occurred after the

---

[1] Chief Judge Miller found that U.S. Health and Americare III shared the same business address, had the same registered office, shared common corporate officers, and engaged in identical lines of business.

settlement between the parties in Lock 1.  Lock seeks approximately $320,000 in unpaid rent, and Lock also seeks approximately $ 10 million in continuing and future damages.

On or about September 27, 2006, U.S. Health sold four of its nursing home units to a third party for approximately 3 million dollars.  The funds from that sale were transferred to Heritage Medical Group, Inc. (Heritage).  Heritage is a managing partner of U.S. Health and appears to be one of the 83 entities that make up the U.S. Health enterprise.  As a result of the sale, on October 3, 2006, Lock moved to enjoin the sale or attach proceeds.  This Court may issue a report and recommendation on Lock's motion pursuant to its referral order and 28 U.S.C. § 636(b)(1)(B).

**II.     ANALYSIS**

Pointing to the September 27, 2006 sale as evidence, Lock argues that U.S. Health is engaging in chicanery at best and fraud at worst in concealing assets that Lock believes are available to satisfy its judgment.  As a result, Lock seeks the extraordinary relief of a prejudgment injunction prohibiting U.S. Health from selling, pledging, refinancing, encumbering, or otherwise transfering any asset without first obtaining this Court's approval.

U.S. Health, not surprisingly, denies Lock's claims of fraud and argues that the September 27, 2006, sale was not fraudulent.  U.S. Health asserts that the suspicious sale was carried out in the customary manner and had been pending since July of last year.  U.S. Health argues that it was a mere coincidence that the sale was finalized a short time after a judgment was entered in favor of Lock.  Furthermore, U.S. Health maintains that it believed it was public knowledge that the lease, which is the basis for both Lock 1 and Lock 2 had been assigned to

Americare, and that the assignment was not meant to defraud Lock in any way.  Finally, U.S. Health argues that it would be denied procedural due process if Lock's motion is granted.

    A.    <u>U.S. Health's Due Process Claim</u>

As a preliminary matter, this Court must determine whether there has been a violation of U.S. Health's procedural due process rights.  To determine if there is a deprivation of procedural due process, a court must inquire into 1) the private interest that will be affected by the action, 2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute safeguards, and 3) the interest of the party seeking the prejudgment remedy.  <u>Conn. v. Dohr</u>, 501 U.S. 1, 11 (1991) (citations omitted).  U.S. Health only disputes whether adequate procedures were used to preserve its due process rights.

It is fundamental that the affected party must be granted the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner prior to the deprivation of that party's property.  <u>Fuentes v. Shevin</u>, 407 U.S. 67, 80 (1983); <u>U.S. v. James Daniel Good Real Property</u>, 510 U.S. 43, 55 (1993).  <u>Dohr</u>, in particular, cautioned that *ex parte* proceedings were especially suspect to creating an erroneous deprivation of due process.  501 U.S. at 16.

U.S. Health claims this Court conducted an *ex parte* proceeding by having a pre-attachment hearing without first requiring Lock to submit an affidavit as required by Ind. Code § 34-25-2-4.[2]  U.S. Health also claims that it was not prepared to respond to Lock at the in-court hearing because it did not know what evidence Lock would present because Lock had not presented an affidavit prior to the hearing.

---

    [2]Lock's witness testified to all of the requirements of Ind. Code 34-25-2-4 at the in-court hearing.

4

This Court is not persuaded with U.S. Health's arguments that there was a denial of procedural due process.  There were no *ex parte* proceedings. U.S. Health was present at the pre-attachment hearing on October 19, 2006, and it was able to cross examine Lock's witnesses or otherwise challenge Lock's evidence.  Additionally, U.S. Health had the opportunity to present its own evidence at the hearing and later in a post-hearing supplemental brief.  Most importantly, all of the attachment proceedings have taken place prior to any property deprivation. Lock has also proposed to post a $100,000 dollar bond, which further reduces the risk of an erroneous deprivation of property.  See Dohr, 501 U.S. at 17-18.  In light of this record, the Court concludes that U.S. Health received adequate notice and had an opportunity to be heard at a meaningful time and in a meaningful manner.  Because this Court has now concluded that U.S. Health was not denied procedural due process, U.S. Health's only remaining arguments are based on Indiana law.

B. Lock's Motion for Attachment

Indiana law provides the means by which to acquire a prejudgment attachment of property.  Ind. Code § 34-25-2-1(b) states:

> The plaintiff may attach property when the action is for the recovery of money and the defendant:
>> . . .
>> (5) has sold, conveyed, or otherwise disposed of the defendant's property subject to execution, or permitted the property to be sold with the fraudulent intent to cheat, hinder, or delay the defendant's creditors.[3]

---

[3]Lock also claims they are entitled to their motion to attach under Ind. Code § 34-25-2-1(b)(4).  However, because this Court finds that Lock has satisfied Ind. Code § 34-25-2-1(b)(5) and because the statute only requires Lock to satisfy one of its six listed instances, this Court does not need to consider whether Lock has satisfied Ind. Code § 34-25-2-1(b)(4) or (6).

In the present case, there is no dispute that U.S. Health sold four of its nursing homes and has relocated the proceeds of that sale to Heritage, one of the entities of the U.S. Health enterprise. Likewise, it cannot be disputed that the property of Americare is subject to attachment if Lock prevails on its claim. The only dispute is whether U.S. Health has acted with fraudulent intent to cheat, hinder, or delay Lock. See Ind. Code § 34-25-2-1(b).

Fraudulent intent may be inferred from the various common law badges of fraud present in a given transaction. Commercial Credit Counseling Services, Inc. v. W.W. Grainger, Inc., 840 N.E.2d 843, 852 (Ind. Ct. App. 2006). The factors include: 1)transfer of property by the debtor during the pendency of a suit, 2) transfer of property that greatly reduces the debtor's estate, 3) a series of contemporaneous transactions that strip a debtor of all property available for execution, 4) secret or hurried transactions not in the normal course of business, 5) any transaction not conducted in the normal course of business, 6) a transaction conducted in a manner differing from customary methods, 7) little or no consideration for the transfer, and 8) a transfer of property between family members. Id. "[N]o single indicium constitutes a showing of fraudulent intent per se, the facts must be taken together to determine how many badges of fraud exist and if together they amount to a patter of fraudulent intent." Id. (quoting Otte v. Otte, 655 N.E.2d 76, 81 (Ind. Ct. App. 1995)).

Lock has presented evidence that several badges of fraud exist. First, property was transferred while Lock 2 was pending and while U.S. Health has failed to satisfy a judgment from Lock 1. Second, the U.S. Health enterprise has been reduced by 3 million dollars after it sold four of its facilities. Third, because Chief Judge Miller found that U.S. Health and Americare were one entity, the property Americare transferred would be subject to execution by

6

Lock.  Fourth, even though U.S. Health contends the transaction had been pending since July of 2005, the proximity of the final sale suggests otherwise.  The sale was shortly after Lock filed Lock 2, and the sale took place before U.S. Health had satisfied a substantial judgment from Lock 1.  The sale certainly appears suspect and uncustomary.  Finally, U.S. Health has retained the benefits of the transferred property because the proceeds were given to Heritage, which is another entity in the U.S. Health enterprise.  This is no different than taking money out of one's left pocket and putting it in one's right pocket.  Consequently, Lock has persuaded this Court that most of the common law badges of fraud are present, and that U.S. Health has acted with fraudulent intent.

The recent findings of Chief Judge Miller in Lock 1 support this Court's finding.  In his order of September 25, 2006, Chief Judge Miller found there was evidence of misrepresentation on the part of U.S. Health, and that U.S. health was an enterprise that used its various entities to shelter itself from liability.[4]

In sum, because the property of U.S. Health is subject to execution by Lock, and because there is sufficient indica of fraudulent intent, this Court **RECOMMENDS** that Lock's motion to enjoin U.S. Health be **GRANTED** [Doc. No. 18].  Specifically, this Court recommends that U.S. Health, their agents, employees, and any other individuals or entities within U.S. Health's control or supervision, including Americare, and all persons or entities in concert with U.S. Health should be enjoined from selling, pledging, refinancing, transferring, or otherwise

---

[4]U.S. Health contends that it believed the assignment that was the subject of Lock 1 was common knowledge and not an indication of misrepresentation.  However, Chief Judge Miller specifically found that U.S. Health's assignment and the facts surrounding it did constitute misrepresentation.  Consequently, this Court will respect the findings of Chief Judge Miller in Lock 1 in applying them to the facts in Lock 2.

encumbering any asset which could otherwise be used to satisfy a judgment that Lock has or may later obtain by virtue of this action.  Further, as a condition precedent to the issuance of the injunction, this Court recommends that Lock post a bond of $100,000.

> **NOTICE IS HEREBY GIVEN that within ten (10) days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations. Fed. R. Civ. P. 72(b). FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER**

**SO ORDERED**.

Dated this 14th Day of November, 2006.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
