UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LOCK REALTY CORPORATION, IX, | ) |
| Plaintiff | ) |
| vs. | ) CAUSE NO. 3:06-CV-487RM |
| U.S. HEALTH, LP, LARRY M. NEW, JOHN W. BARTLE, REBECCA J. BARTLE, and AMERICARE LIVING CENTERS III LLC, | ) |
| Defendants | ) |

OPINION AND ORDER

On September 11, 2006, the court entered an order granting Lock Realty immediate possession of what had been the defendant's nursing home, and what the parties refer to as the "Goshen facility." As part of that order, the court directed the defendants to "provide all necessary assistance to continue current operations at the Nursing Home, including without limitation all consent or authorization", and to "immediately provide Lock with all books, records and data pertaining to the Nursing Home, on and off-site, including but not limited to: employee contracts, vendor contracts, medical records, employment records, and accounting and trust records . . . ." The court assumes the reader's familiarity with that order and the events leading up to it.

Since that order, a spitefulness reminiscent of high school appears to have marked the parties' dealings with each other. As is explained below, the parties have managed to create and present for decision a situation in which winner and

loser are determined by the whim of the court—hardly what business schools describe as good business practice. One wonders what the companies' shareholders would think if they knew each side was gambling millions of dollars on sequential games of "gotcha." Should that ever be an issue for this court, though, it is for another day.

Today's issues concern the defendants' obligation to file a report with Medicare known as a "final cost report" and Lock Realty's request for the defendants' history of worker's compensation claims at the Goshen facility.

### A.

Lock Realty's worker's compensation insurer wants to know the Goshen facility's claims history. Lock Realty doesn't know the facility's claims history, and has asked the defendants to authorize the release of its "loss runs" to Lock Realty's worker's compensation carrier. Consistent with other dealings between the parties, the defendants have declined, saying they don't maintain loss runs because they were self-insured. Lock Realty (paying a monthly premium $5,000 higher because it hasn't provided the information to its carrier), says a self-insured entity should (indeed, must, *see* IND. CODE 22-3-4-13) be able to generate the information from its own records.

The court is persuaded that it is more likely than not that such information is available to the defendants, though perhaps not in the form of a separately maintained "loss run" report. There simply is no reason apparent from this record

that the defendants would not have information concerning worker's compensation claims and payments arising from the Goshen facility. The information seems certain to be included within "all books, records and data pertaining to the Nursing Home, on and off-site, including but not limited to: employee contracts, vendor contracts, medical records, employment records, and accounting and trust records" that the defendants were ordered to make available to Lock Realty under the terms of the September 11 immediate possession order. The defendants' refusal to provide the information cannot be anything but willful. The defendants are in contempt by virtue of this violation of the September 11 order.

B.

Medicare regulations obligate the defendants to file a final cost report for the period ending on September 12, 2006, when Lock Realty took possession and control of the facility. The defendants have not done so. Neither side seems to have given much priority to this omission until Medicare began withholding reimbursements because the report hadn't been filed. Since the reimbursements now run to Lock Realty's benefit, Lock Realty wants the defendants to file the report. The defendants say they need financial information from Lock Realty before they can prepare and certify the report. For reasons not clear from the current record, Lock Realty is disinclined to provide that information and claims the defendants don't need the information.

There was a time that the defendants did not need the information they now seek. Medicare recognizes two types of final cost reports. The court is not confident of the terminology, but the gist of it is this: a Medicare provider may file a short form, or "low utilization" report within 5 months of the close of the period to which the report relates. None of the information the defendants say they need would have been needed to prepare that form. The short form report needed to include only information up to the date—and nothing from after—Lock Realty took over. Because the facility does its accounting on an accrual basis, what came in, or went out, or was written off or credited, is unimportant to the short form report. The short form report is based entirely on the period in which the defendants operated the Goshen facility, so all necessary information for the short form report is in the defendants' possession.

But the time in which the defendants could file the short form as a matter of right passed in February, 5 months after Lock Realty took over. To file what the court will call (because the proper terminology isn't in the court's notes) the "longer form," the defendants appear to need the financial information they have requested from Lock Realty. As already noted, Lock Realty, in the spirit of non-cooperation that both sides display, has refused to provide that information. Hence the self-imposed stalemate that led the parties into this courtroom for a hearing of a few hours' duration on August 7.

It may be that cooperation is unnecessary. Robert Thomas, who testified as an expert for Lock Realty at the hearing, said that Medicare (which doesn't

4

especially want to pore over the longer form if the short form will do) grants permission—when asked—to providers to file a short form report even after the five month period has passed. Medicare might do so in this case, or it might not—the court cannot know at this point because no such request has been made.

Lock Realty has brought the issue to the court on a rule to show cause, seeking a finding that U.S. Health has acted willfully in disobedience of the September 11 order. An innocent misunderstanding of Medicare requirements, or merely overlooking a legal obligation, is not contumacious. To be entitled to any relief under the approach it has chosen, Lock Realty must persuade the court that the defendants have acted willfully. Lock Realty has met that burden. The defendants have come forth with no credible explanation for their failure to file the final cost report within five months of September 12, when there would have been no need for Lock Realty's financial information.

This leads to the point the court made at the outset, that the parties have allowed the case to turn on the court's whim—or more accurately, on the court's exercise of discretion provided by principles of equity, which might appear to a litigant or shareholder to be a whim. Lock Realty necessarily seeks equitable relief, and courts of equity have long been empowered to examine the conduct of the party invoking equity. Because "equitable relief is costly to the judicial system," Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd., 970 F.2d 273, 281 (7th Cir. 1992), courts may decline to order equitable relief in favor of a party that comes to court with unclean hands. Id. at 281-282;

5

American Hosp. Supply Corp. v. Hospital Products Ltd., 780 F.2d 589, 601 (7th Cir. 1985). Lock Realty, which on this record appears to have stonewalled the defendants' requests for financial information that might turn out to be necessary, and that certainly would have removed any impediment to the filing of the "longer form" final cost report without the need for judicial intervention, comes to court with palpably unclean hands.

In an equitable effort to account for Lock Realty's own failure to do equity before seeking an order in equity (and recognizing that Lock Realty's hands are clean with respect to the worker's compensation claim history), the court finds the defendants in contempt for their failure to file the final cost report when they could have done so without Medicare's permission. The court will enter an order seeking to assure that the report is filed. Because of the role Lock Realty's unclean hands have played in the situation now before the court, however, the court will decline, in today's order and in the future (absent further contumacious behavior), to order that the defendants pay Lock Realty's damages incurred as a result of the failure to file the report, or attorney fees incurred in pursuing this rule to show cause. Lock Realty may seek damages or attorney fees with respect to the finding concerning the worker's compensation claims.

C.

The defendants are directed to inquire, within the next 3 business days, whether they can file a short form, or "low utilization," final cost report. The

defendants shall communicate the response to Lock Realty the same day the response is received. If the defendants are granted permission to do so, they shall file the short form final cost report within five business days of receipt of that permission. In aid of the September 11, 2006 order, the court further orders that if permission to file the short form is denied, Lock Realty shall open its books to the extent necessary for the defendants to acquire the necessary information on the following topics: the value of consumables, escrow statements from Lock Realty's mortgage company for the Goshen Facility, the amount of cash proceeds Lock Realty collected, and remittance advises. The defendants shall file the long form report within five business days of receipt of that information.

The defendants shall also provide Lock Realty, within ten business days of the date of this order, the information described in IND. CODE 22-3-4-13(a, c) for the Goshen facility for the three years preceding Lock Realty's possession of the Goshen facility.

SO ORDERED.

ENTERED:   August 10, 2007


          /s/ Robert L. Miller, Jr.
          Chief Judge
          United States District Court