UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

LOCK REALTY CORPORATION IX,       )
                                  )
            Plaintiff             )
                                  )
      v.                          )        CASE NO. 3:06-CV-487RM
                                  )
U.S. HEALTH, LP, *et. al.,*       )
                                  )
            Defendants            )

OPINION AND ORDER

After years of protracted litigation, judgment was entered for Lock Realty on its breach of lease claim in the net amount of $244,833.13. Lock Realty's motion for attorneys' fees [Doc. No. 307] and its bill of costs [Doc. No. 306] currently pend before the court. For the following reasons, the court grants the motion for attorneys' fees and the bill of costs in part, and denies it in part, and awards Lock Realty $696,390.50 in reasonable attorney fees and $4,756.14 in costs.

I. Background

In January 2002, defendant U.S. Health, L.P. entered into a 20-year lease with Lock Realty Corporation IX for a nursing home in Goshen, Indiana, beginning in April 2002 and ending in March 2022. The lease was guaranteed by defendants Larry New, John Bartle, and Rebecca Bartle, and was assigned to defendant Americare Living Centers III, LLC. Lock Realty brought this action alleging that the defendants breached the lease by assigning it to Americare without Lock Realty's written consent and by failing to pay rent for the months of June, July and August

2006, and also breached the guaranties. Lock Realty sought immediate possession of the leased premises and damages. The defendants didn't contest the breach, but disputed the amount of damages Lock Realty was entitled to recover as a result of the breach.

After the court granted Lock Realty's motion for immediate possession in September 2006, Lock Realty moved for summary judgment seeking $10,291,817.73 in future rent under the lease agreement's savings clause and acceleration provision. The court denied Lock Realty's motion, finding that the defendants' interpretation of the damages clause was more persuasive and that the calculation of damages required an expert's services. [Doc. No. 102]. The court denied Lock Realty's motion to reconsider that order on April 4, 2007. [Doc. No. 122].

Lock Realty filed a second motion for partial summary judgment seeking past due rent for June 1 through September 11, 2006 in the amount of $371,249.30, and prejudgment interest. The defendants maintained that any amount owed was offset by escrow accounts, tax payments, consumables, and other assets of the defendants from which Lock Realty has benefitted since taking possession of the facility. But the court found that the defendants had waived their right to assert the defense of setoff by failing to assert it in a timely filed answer, and granted Lock Realty's motion. [Doc. No. 209].

In its third summary judgment motion, Lock Realty reasserted its claims for future rent in the amount of $6,092,153.00, and submitted Jean Tipton's affidavit

in support. The defendants moved to strike portions of Ms. Tipton's affidavit and filed a cross-motion for summary judgment, arguing that Lock Realty hadn't suffered any actual damage based on its own expert opinions, or, alternatively, was limited to liquidated damages. The defendants also filed a motion to reconsider the court's earlier ruling with respect to offset. The court found that Ms. Tipton's valuation methodology and opinion as to the fair market value of the property was unreliable, granted the defendants' motion to strike, and denied Lock Realty's motion for summary judgment. Finding no other evidence of Lock Realty's actual damages, the court granted the defendants' cross-motion for summary judgment, and limited Lock Realty to recovery of liquidated damages (the secuirty deposit and escrow accounts). The court also granted the defendant's motion to reconsider its earlier ruling, and permitted them to assert setoff against the damages awarded to Lock Realty on its breach of lease claim. [Doc. No. 268].

The parties agreed that the consumables left at the Goshen facility had a value of $63,000, and the court found that the defendants were entitled to setoff in that amount, and directed the parties to brief the defendants' remaining claims for setoff. The defendants conceded in their brief that they had no claim to escrow funds held by Lock Realty or to the prepaid taxes in those funds, but claimed an entitlement to setoff for personal and intellectual property left at the Goshen facility after Lock Realty took possession, and for payments collected by Lock Realty for services provided by the defendants. Lock Realty, in turn, acknowledged receiving credits in the amount of $61,298.65 for services rendered by the

defendants, but argued for the first time that the defendants weren't entitled to setoff for those payments because Medicaid had charged Lock Realty $163,334.96 for earlier overpayments to the defendants, causing a net loss to Lock Realty of more than $102,000.00, as shown by the affidavit of Lock Realty's CEO, William Center, dated September 29, 2009. After briefing was completed, Lock Realty filed its fourth motion for summary judgment on the issue of setoff. That motion was also denied. [Doc. No. 295].

A one-day bench trial on the issue of setoff was conducted on July 20, 2010, and the court issued its findings on July 21, 2010, directing that judgment be entered for Lock Realty and against the defendants in the net sum of $244,833.13, consisting of past rent of $371,249.30 less set-offs of $63,000.00 for supplies and consumables and $63,366.71 for withheld payments. Lock Realty was granted leave to retain the security deposit of $212,703.96 and the escrow account of $416,328.25; was found to be a prevailing party in light of the judgment; and was directed to file its fee petition. [Doc. No. 303].

## II.  ATTORNEYS' FEES

The award of fees in a diversity case is governed by state law. <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 259 n.31 (1975); <u>Jackman v. WMAC Inv. Corp.</u>, 809 F.2d  377, 383 (7th Cir 1987). While Indiana recognizes the parties' ability to shift the obligation to pay attorney fees by contract or agreement, the fees must be reasonable. <u>Stewart v. TT Commerical</u>

One, LLC, 911 N.E.2d 51, 58 (Ind. App. 2009). The party seeking the award must produce objective evidence of the nature of the services rendered and show the reasonableness of the fee requested. *See* Jackman v. WMAC Inv. Corp., 809 F.2d at 383; *see also* Posey v. Lafayette Bank & Trust Co., 583 N.E.2d 149, 152 (Ind. App. 1991) ("Where the amount of the fee is not inconsequential, there must be objective evidence of the nature of the legal services and the reasonableness of the fee."). Indiana Professional Conduct Rule 1.5(a) is used as a guide in determining the reasonableness of an attorney fee award, Order for Mandate of Funds Montgomery County Council v. Milligan, 873 N.E.2d 1043, 1049 (Ind. 2007), and provides:

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

*See also* <u>Blanchard v. Bergeron</u>, 489 U.S. 87, 91 n.5 (1989); <u>Greenfield Mills, Inc.</u>

<u>v. Carter</u>, 569 F.Supp.2d 737, 759 (N.D. Ind. 2008) (same factors considered in

adjusting lodestar amount under federal fee-shifting statute).

Lock Realty seeks an award of attorney fees and expenses under paragraph

17 of the lease agreement (which provides that the prevailing party may recover

attorneys' fees), the court's July 21, 2010 order of judgment (finding that Lock

Realty was a prevailing party), and the Guaranties of Lease Agreement executed

by defendants Larry New, John Bartle, and Rebecca Bartle.

The starting point in determining any fee request's reasonableness is the

lodestar – the rate charged and the hours worked. <u>Fortner v. Farm Valley-</u>

<u>Applewood Apartments</u>, 898 N.E.2d 393, 400 (Ind. App. 2008); <u>In re Estate of</u>

<u>Inlow</u>, 735 N.E.2d 240, 257 (Ind. App. 2000). Lock Realty submitted one affidavit

in support of it's motion, that of lead counsel Timothy Maher, and a 286 page

billing statement that shows hourly billing rates for attorneys ranging from

$165.00 to $375.00, and an hourly rate for paralegals ranging from $135.00 to

$150.00. Mr. Maher attests that from July 2006 through July 2010, thirteen

attorneys (Alan Feldbaum, Katherine Bishko, Mark Adey, James Grubbs, Stacy

Cook, Alice Springer, Michael Watkins, Damon Leichty, Laura Seng, Michael

Palmer, Gary Hoke, Sarah Kuhny and himself) and two paralegals (Judy Shroyer

and Gretchen Snyder) worked a total of 2,776.50 hours on this case, at a total

cost of $804,614.50. The billing statement, however, includes time expended not

only by the fifteen people identified in Mr. Maher's affidavit, but by at least eleven

other individuals, including Richard Deahl, Janilyn Daub, Timothy Emrick, Joseph Fullenkamp, Tammy Harnish, Kelly Hartzler, Andrew Heck, Nicholas Heiny, Gerald Lutkus, David Pruitt, and Eric Thomason. Mr. Maher attests in paragraph 7 of his affidavit that:

> Lock was charged standard rates for this litigation. Based on the legal experience, education, and training of the attorneys and paralegals involved and the nature of this case, I believe these standard billable rates are reasonable and customary rates to be charged for people in this area and for the work that was done.

The defendants contend that Lock Realty hasn't shown that the rates and hours expended are reasonable, and asks the court to either deny the motion for fees in its entirety or significantly reduce the amount awarded. They contend that Mr. Maher's affidavit alone doesn't establish market value, and that paragraph seven of that affidavit is inadmissible under Fed. R. Evid. 602 and doesn't constitute objective evidence that the billable rates are reasonable and customary. *Citing* Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991); Pizano v. Knight, 201 WL 379427 (S.D. Ind. Jan. 25, 2010). The defendants' motion to strike paragraph 7 of Mr. Maher's affidavit [Doc. No.318] also pends.

Lock Realty responds that Mr.Maher's affidavit is sufficient because it was based on his personal knowledge as an attorney in the area, that it establishes that the rates billed were the attorney's standard hourly rates for the services provided, and that the attorneys' actual billing rates are "'presumptively appropriate' to use as the market rate." Spegon v. Catholic Bishop, 175 F.3d at

555 (quoting <u>People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205</u>, 90 F.3d at 1310). The court agrees.

When read in isolation, the averments in paragraph seven appear to be based solely on Mr. Maher's beliefs, but the preceding paragraphs of his affidavit demonstrate that Mr. Maher has personal knowledge of the facts set forth in the affidavit and is competent to testify as to those facts. Mr. Maher's affidavit and supporting documentation attached thereto are thus admissible under Fed. R. Evid. 602, evidence the actual billing rates charged by all of the attorneys and paralegals who worked on the case, and establish the market rates for the services rendered. That evidence is only presumptive, <u>Spegon v. Catholic Bishop</u>, 175 F.3d at 555; <u>People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205</u>, 90 F.3d at 1310, but the defendants haven't presented any evidence to rebut that presumption. They simply opine that the rates aren't reasonable, "especially in a period of severe economic recession." The motion to strike paragraph seven of Mr. Maher's affidavit, accordingly, is denied.

The defendants generally maintain that it was unreasonable to employ the services of twenty-six attorneys and/or paralegals and to expend more than 2,700 hours in a case in which the only issue should have been the amount of damages arising from the breach of a lease agreement that expressly provided the method for determining those damages, and Lock Realty ultimately recovered only a small percentage of the amount originally claimed. The defendants specifically object to several entries on the billing statement that they deem problematic and contend

that those entries should be excluded because they involve matters unrelated to

the breach of lease claim (*i.e.*, the creation of a new corporation, LRC

Management, LLC, to operate the facility[1] and a new management agreement with

SAK,[2] and regulatory matters relating to the operation of the facility[3]), issues

brought forward by intervenors HCSG and U.S. Holdings,[4] and time related to

---

[1] The entries include time expended and amounts billed for services provided by:
(1) Stacey Cook on September 5, 6, and 12, 2006;
(2) Alan Feldbaum on September 5 and 6, 2006;
(3) James Grubbs on September 5 and 11, 2006.
(4) Gretchen Snyder on September 5, 6 , 7, and 11, 2006; and
Total billed for these services: $7,541.50 (28 hours).

[2] The entries include time expended and amounts billed for services provided by:
(1) Alan Feldbaum on September 5, 6,7, 8, 10, 11,12, 13, 14, 15, 20, 21, 22, 25, 28 and
29, 2006, and October 2, 2006;
(2) Timothy Maher on September 5, 6, 7, 8, 12, 2006,
(3) Katherine Bishko September 7, 8, 2006
(4) James Grubbs on September 8, 19, 20, 2006
(5) Stacey Cook on September 14, 22, 26, and 28, 2006.
Total billed for these services: $25,821.00 (84.2 hours).

[3] The entries include time expended and amounts billed for services provided by:
(1) Stacey Cook on September 11, 12, 13, 14, 15, 18, 25, 26, 27, 28 and 29, 2006,
October 2, 4, 5, 6, 11, 12, 27 and 31, November 1, 3, 6, 7, 13, 14, 16 and 17, 2006, December
5, 12, 17, 19 and 20, 2006, January 22, 29, 30 and 31, 2007, February 5, 15, 20 and 26,
2007, March 5, 12, 13 and 14, 2007; March 5, 12, 13 and 14, 2007; April 4, 5, 9 and 11, 2007;
May 7 and 30, 2007; and June 14 and 20, 2007;
(2) Alan Feldbaum on September 12, 19, 20, 25, 26 and 29, 2006 and October 31,
2006;
(3) James Gruggs on September 11, 13, 14 and 25, 2006, October 2, 4, 2006, January
31, 2007, February 12 and 14, 2007, and March 27, 2007;
(4) Timothy Maher on September 12, 2006, October 31, 2006, November 1and14, 2006,
January 31, 2007, April 6, 2007, June 12, 2007, August 17, 2007, September 10, 11,17, 18,
23, and 24, 2008, and October 8, 14, 15 and 17, 2008;
(5) Katherine Bishko on September 13, 2006;
(6) Sarah Kuhny on August 3, 2007, September 18, 2008, and October 14, 2008; and
(7) Mark Adey on August 7, 2007, September 11,16,17 and 29, 2008, and October 8,
2008.
Total billed for these services: $32,696.00 (120.7 hours).

[4] The entries include time expended and amounts billed for services provided by:
(1) Timothy Maher on December 5, 6,11 and 12, 2006, February 21,22,23,26 and 28,
2007, and March 1and 2, 2007;
(2) Mark Adey on December 5, 8 and 11, 2006, and February 23, 2007; and

9

expert witness, Jean Tipton[5], or because they are vague and/or inadequately explained or documented and not necessarily related to the litigation.[6] The defendants contend that the inclusion of time spent on matters unrelated to the breach of lease claim, the lack of detail with respect to services rendered, and the use of block billing make it difficult, if not impossible, to determine how many hours were actually spent on any given related issue, and whether the hours expended were reasonable and necessary, and ask the court to either strike the problematic entries or reduce the proposed fee by a reasonable percentage.

Lock Realty maintains that it had no choice but to take over operation of the facility and that the costs of doing that were a reasonably foreseeable result of the

---

(3) Alan Feldbaum on February 23, 2007.
Total billed for these services $15,551.00 (50.9 hours).

[5] The entries include time expended and amounts billed for services provided by:
(1) Alan Feldbaum on May 15, 16, 17 and 31, 2007, June 14, 2007, and July 11, 12 and 13 2007;
(2) Timothy Maher on June 14, 17, 26 and 27, 2007, July 2, 3, 11, 13 and 16, 2007, and May 13, 2008;
(3) Mark Adey on July 11, 12, 13 and 16, 2007, and October 29, 2007
(4) James Grubbs on May 15, 2007;
(5) Sarah Kuhny on June 4, 2007, July 3, 2007, November 19, 2007, and June 14, 2008;
(6) Alice Springer on September 22, 23, 24, 28 and 29, 2009;
(7) Damon Leichty on July 12, 2007; and
(8) Joseph Fullenkamp on July 11, 2007.
Total billed for these services: $19,285.50 (61.9 hours).

[6] The entries include time expended and amounts billed for services provided by:
(1) James Gruggs on November 17, 2006 and May 1, 2008;
(2) Timothy Maher on January 2, 2007, May 21 and 24, 2010, and July 23 and 27, 2010;
(3) Heck on February 28, 2007;
(4) Kuhny on January 11, 2008 and July 7, 2008;
(5) Emrick on May 13 and 18, 2008; and
(6) Thomason on November 19 and 20, 2009, December 18, 2009, and February 9, 2010.
Total billed for these services: $7,429.50 (25.9 hours).

defendants' breach of the lease agreement. But it cites no authority requiring it to do so.

Under the guaranties' express terms, the defendants agreed to pay attorneys' fees and legal expenses incurred "by [the] Landlord in endeavoring to collect or enforce the Liabilities [under the Lease Agreement]," and in enforcing the guaranties. For purposes of this litigation, Lock Realty was, and is, a landlord, not a health care provider, and wasn't legally or contractually obligated to assume operation of the nursing home facility under the terms of the lease. When the defendants breached the lease and ceased operations, the residents or their families or legal representatives would have been required to make alternative arrangements for their care — an unfortunate consequence, but one for which Lock Realty wasn't responsible. It was neither reasonable nor foreseeable under the lease's terms that Lock Realty would choose to take over operation of the facility and the potential liabilities that went with it. While Lock Realty is to be commended for providing continuing care to the facility's residents, it can't reasonably expect the defendants to pay for its transition from landlord to healthcare and Medicaid/Medicare provider, when Lock Realty wasn't legally or contractually obligated to do so.

Given the limited degree of success obtained, the defendants suggest that the court award Lock Realty eight percent of its fee request ($64,369.16), which, according to the defendants, is comparable to Lock Realty's success rate given that Lock Realty originally was asking for over $10 million and recovered a net

judgment for $244,833.13; or, alternatively reduce the fee award by a percentage the court deems reasonable. The plaintiffs cite several federal cases in support, *i.e.*, <u>Hensley v. Eckerhart</u>, 461 U.S. 424 (1983); <u>Harper v. City of Chicago Heights</u>, 223 F.3d 593 (7th Cir. 2000), but provide no authority under Indiana law for reducing the award in the manner they suggest.

Under Indiana law, the court can consider the amount involved in the lawsuit in determining the reasonableness of the requested fees, but it is an abuse of discretion to reduce an otherwise reasonable fee request based solely on the amount of the judgment. <u>Benaugh v. Garner</u>, 876 N.E.2d 344, 348 (Ind. App. 2007); <u>Hanson v. Valma M. Hanson Revocable Trust</u>, 855 N.E.2d 655, 667 (Ind. App. 2006) ("the amount of the recovery should have no impact on the amount of attorney fees to which the Appellants are entitled"); <u>Zaring v. Zaring</u>, 39 N.E.2d 734, 737 (Ind. 1942) ("the right to [attorney fees]…should not depend on the result of the litigation but rather upon the reasonable necessity for such litigation"). While the court is unwilling to reduce the fee request based solely on the final judgment, it can't find on the basis of this record that all of the hours expended in this case were reasonable and necessary given the nature of the litigation.

What began as a relatively straightforward landlord-tenant breach of lease case evolved into a four-year long quest to convert a landlord into a healthcare and Medicaid/Medicare provider, address all the subsidiary problems that went along with that transformation, and hold the defendants liable for the associated legal services and costs. During that time, Lock Realty filed four summary

judgments, and prevailed on only one. It initially sought over $10 million in damages and effectively recovered only $244,833.13 (Lock Realty's right to retain the security deposit and funds in escrow were uncontested).

The burden is on the party seeking the award to produce objective evidence of the nature of the services rendered and the reasonableness of the fee requested. *See* Jackman v. WMAC Inv. Corp., 809 F.2d at 383; *see also* Posey v. Lafayette Bank & Trust Co., 583 N.E.2d 149, 152 (Ind. App. 1991). Lock Realty's attorneys used block billing, which included time spent on matters unrelated to the breach of lease claim and lacked detail with respect to the type of services rendered and the amount of time expended on each, making it impossible to distinguish compensable from non-compensable time. While block billing isn't prohibited, Farfaras v. Citizens Bank and Trust of Chicago, 433 F.3d 558, 569 (7th Cir. 2006), it "isn't without consequence." *See* Loparex, LLC v. MPI Release Technologies, LLC, 2011 WL 2066666 at *3 (S.D. Ind. May 25, 2011). When, as here, the block entries contain both compensable and non-compensable tasks, the party seeking fees must present evidence of the amount of time actually spent on the compensable tasks, and the reasonableness of the fee requested for those services. Id. Lock Realty hasn't met that burden, so the court cannot allow compensation.

Lock Realty's decision to transform itself into a health care provider might have required additional skills and manpower, but the hours expended for those services aren't chargeable to the defendants. The time expended (283.8 hours) and fees charged ($81,609.50) for services relating to LRC Management LLC, SAK,

regulatory matters, and intervenors' claims that arose after Lock Realty retook possession of the nursing facility weren't necessary to this litigation, and so must be disallowed.

So too, the defendants shouldn't be charged with any unnecessary duplication of efforts by Lock Realty's attorneys, or for the excessive amount of time spent on substantive issues on which Lock Realty didn't prevail. *See* <u>Olcott Intern. & Co., Inc. v. Micro Data Base Systems, Inc.</u>, 793 N.E.2d 1063, 1079 (Ind. App. 2003) ("An excessive attorney fee award can be avoided when fees are apportioned according to the significance of the issues upon which a party prevails, balanced against those on which the party does not prevail."). Lock Realty's attorneys expended 61.9 hours, at a cost of $19,285.50, for services relating to Jean Tipton, the expert Lock Realty retained to provide a calculation of future rents in support of its third motion for summary judgment. The court found Ms. Tipton's valuation methodology and opinion unreliable, struck the substantive portions of her affidavit, denied Lock Realty's motion for summary judgment on the issue of future rent (not once, but twice), and granted the defendants' cross-motion for summary judgment finding that Lock Realty hadn't presented sufficient evidence to prove actual damages. Some of that time and expense might have been attributable to other matters, but the court can;t determine what the breakdown would be because the attorneys used block billing and provided no additional evidence to support their request. In the end, Lock Realty spent almost $27,000.00 ($19,285.50 in attorneys' fees and $7,600.10 in

expert fees), for an expert opinion that was unreliable and inadmissible — an excessive and unreasonable expenditure in light of the results obtained.

The defendants also maintain that Lock Realty should be foreclosed from recovering $7,329.00 in fees billed for services that weren't adequately explained or documented. The court again agrees. The burden was on Lock Realty to produce evidence of the type of services provided and the reasonableness of the fee requested. *See* <u>Jackman v. WMAC Inv. Corp.</u>, 809 F.2d at 383; *see also* <u>Posey v. Lafayette Bank & Trust Co.</u>, 583 N.E.2d 149, 152 (Ind. App. 1991). Lock Realty hasn't met that burden with respect to the entries identified in footnote 6 above.

For the reasons stated, the court finds the hours expended by Lock Realty's attorneys in this litigation were excessive and unreasonable, disallows the challenged entries in their entirety, and awards Lock Realty $696,390.50 in reasonable attorneys' fees.


III, BILL OF COSTS

The award of costs is a procedural matter governed by federal law under Fed. R. Civ. P. 54(d). *See* <u>In re Merrill Lynch Relocation Mgmt., Inc.</u>, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); <u>Muslin v. Frelinghuysen Livestock Managers, Inc.</u>, 777 F.2d 1230, 1235-1236 (7th Cir. 1985). While Rule 54(d) creates a presumption that the prevailing party will be awarded costs, the court still must determine whether the amounts sought are allowable cost items and are reasonable in amount and necessity to the litigation. <u>Little v. Mitsubishi Motors</u>

15

North America, Inc., 514 F.3d 699, 702 (7th Cir. 2008). A losing party arguing against an award of costs must make "an affirmative showing that taxed costs are not appropriate." Beamon v. Marshall & Ilsley Trust Co., 411 F.3d 854, 864 (7th Cir. 2005).

Lock Realty seeks reimbursement for witness fees in the amount of $2,270.00 (for "consultation services" provided by James Wesp on July 20, 2010), and for "other costs" in the amount of $18,846.21.[7] A 23-page invoice attached to its bill of cost contains a list of those "other costs," which include filing fees paid to the Clerk of the Court ($350.00), transcript fees ($261.19), copying charges ($1,178.35), messenger courier services ($235.94), computerized legal research ($3,651.27), "Access Indiana/Civic net" fees ($89.00); "Pacer Court Filing System charges" ($244.24); expert witness fees ($7,600.10) and a related finance charge ($50.92), an injunction bond premium ($2,000.00); title search fees ($420.00), and office supplies ($15.00). They also include $2,750.20 in costs associated with Lock Realty's operation of the facility after it retook possession of the property.[8]

---

[7] The bill of costs reflects a total of $18,890.46 for "other costs," but includes a double billing for a $12.00 recording fees to the Marion County Recorder, which was billed on 2/28/07 and paid on 3/13/07 (invoice 1061741), and a $36.75 copying charge for 30 copies on 2/28/07 (the amount billed should have been $4.50). The total billed for "other costs" has been corrected to reflect those changes.

[8] Those costs include:

| Date | Name | Amount | Description |
|------|------|--------|-------------|
| 09/05/06 | Snyder | $90.00 | Filing fees – Indiana Secretary of State filing fee for Articles of Organization |
| 09/07/06 | Cook | $1,120.00 | Other/miscellaneous charges–Indiana Dept. of Health–license fee. |

16

| | | | |
|---|---|---|---|
| 09/07/06 | Snyder | $30.00 | Filing fees – Indiana Secretary of State filing fees for Certificate of Assumed Business Name |
| 09/07/06 | Snyder | $12.00 | Recording fees – Elkhart County Recorder recording fee for Certificate of Assumed Business Name |
| 09/14/06 | Grubbs 1 | $6.76 | Courier service – Federal Express to Bank Baver, SAK Management Services, LLC |
| 09/21/06 | Feldbaum | $160.20 | Publication cost–Goshen News legal notice; placement ad–The Courtyard of Goshen |
| 09/21/06 | Feldbaum | $160.20 | Publication cost–Goshen News legal notice; placement ad – The Courtyard of Goshen |
| 09/23/06 | Feldbaum | $31.95 | Publication cost–Goshen News legal notice; placement ad–The Courtyard of Goshen |
| 09/23/06 | Feldbaum | $31.95 | Publication cost–Goshen News legal notice; placement ad – The Courtyard of Goshen |
| 09/23/06 | Feldbaum | $160.20 | Publication cost–Goshen News legal notice; placement ad – The Courtyard of Goshen |
| 09/24/06 | Feldbaum | $160.20 | Publication cost–Goshen News legal notice; placement ad – The Courtyard of Goshen |
| 09/25/06 | Feldbaum | $160.20 | Publication cost–Goshen News legal notice; placement ad – The Courtyard of Goshen |
| 09/25/06 | Feldbaum | $80.50 | Publication cost–The Elkhart Truth  placement ad–The Courtyard of Goshen |
| 09/25/06 | Feldbaum | $370.06 | Publication cost–The Elkhart Truth placement ad–The Courtyard of Goshen |
| 09/26/06 | Harnish | $16.00 | Copying costs–Elkhart County Recorder |
| 10/05/06 | Cook | $7.02 | Courier service–Federal Express to Adminaster Federal |
| 02/28/07 | Snyder | $12.00 | Recording fees–Marion County Recorder– recording of assumed business name |
| 02/28/07 | Snyder | $30.00 | Filing fees–Indiana Secretary of State– filing fee for Certificate of Assumed Business Name |
| 02/28/07 | Snyder | $12.00 | Recording fees–Elkhart County Recorder– Recording fee for Certificate of Assumed Business Name |

The defendants object to most, but not all, of those costs. They contend that:

(1) the costs incurred as a result of Lock Realty's choice to incorporate another entity to operate the nursing home and to become a Medicare and Medicaid provider were unrelated to this litigation and should be disallowed;

(2) Lock Realty hasn't adequately described or documented the nature, substance, or purpose of the charges for copying, Access Indiana/civic net, messenger courier services, PACER court filing system, and computerized legal research, making it impossible to determine the reasonableness and necessity of those costs; and

(3) the expert witness fee ($7.600.10) and related finance charge ($50.92) and witness fee billed for Mr. Wesp's services ($2,270.00) aren't reasonable because the substantive portions of the expert's testimony and

---

| | | | |
|---|---|---|---|
| 03/27/07 | Kuhny $6.92 | | Courier service–Federal Express Corporation Delaware County |
| 03/28/07 | Kuhny $36.00 | | Filing fees–Recorder of Delaware County |
| 04/04/07 | Kuhny $15.00 | | Recording fees–Recorder of Delaware County |
| 04/04/07 | Kuhny $7.02 | | Courier service–Federal Express Corporation–Delaware County Recorder |
| 04/05/07 | Kuhny $7.02 | | Courier service–Federal Express Corporation–Marion Superior Court |
| 05/03/07 | Uhl | $27.00 | Recording fees–Marion County recorder |

report were deemed unreliable and inadmissible, *citing* <u>J.S. Nicol, Inc. v.</u>
<u>Peking Handicraft, Inc.</u>, 2008 WL 4613752 (S.D. N.Y. Oct. 17, 2008), and
James Wesp testified as a fact witness, not an expert.

In its reply, Lock Realty asserts that all of the costs were necessarily
incurred as a result of the breach of the lease and are reasonable, advises the
court that "[i]f necessary, [it] can look to Lock's contemporaneously filed attorney
fee application to verify assessments of costs for particular tasks," and concludes
that "under the prevailing rules Lock's submissions are appropriate and should
be awarded." The court disagrees.

The defendants have sufficiently rebutted the presumption in favor of
awarding costs in this case, and Lock Realty hasn't shown that the challenged
costs are allowable, reasonable, and/or necessary to this litigation. Lock Realty
makes conclusory assertions to that effect, and suggests that the court cross-
reference the bill of costs with the motion for attorneys' fees, if necessary, to
determine the reasonableness and necessity of the amounts billed. But the court
isn't required to conduct a line-by-line review of the invoice, or cross-reference
other documents, to decide whether the charges are reasonable and necessary.
*See* <u>Rexam Beverage Can Co. v. Bolger</u>, 620 F.3d 718 (7th Cir. 2010). Lock Realty
provided little, if any, information or detail about the nature, substance, or
purpose of the "other costs" which it seeks to recover, and didn't explain why it is
entitled to recover money spent on items that were not reasonably related to this
breach of contract litigation or covered under 29 U.S.C. § 1920. It provided only

a general categorical description of the costs incurred (*i.e.*, "copying charges," "courier services," "computerized legal research"), listed the date and amount charged, and asserted that all of these costs were reasonable and related to the litigation, and should be awarded "under the prevailing rules."

Once the presumption in favor of awarding costs to the prevailing party is rebutted, the prevailing party must demonstrate that the costs it seeks are allowable, reasonable, and necessary. Lock Realty's submissions and conclusory assertions fall short of the mark.

For reasons previously stated, the court finds that the $2,750.20 in costs incurred as a result of Lock Realty's decision to transform itself into a health care and Medicare/Medicaid provider were not necessary to this litigation, and cannot be taxed to the defendants.

While copying costs are recoverable under 28 U.S.C. § 1920, the lack of detail with respect to those charges (*i.e.*, the purpose, type of documents copied, who they were copied for) makes it difficult to determine how may of the copies were related to the litigation, and whether the costs incurred were reasonable and necessary. It's also unclear from Lock Realty's submissions what the Access Indiana/Civic net, messenger courier services, and PACER system charges were for, or why Lock Realty should be allowed to recover those expenses. The lack of detail once again makes it difficult to decide whether those costs were reasonable and necessary. Under the circumstances, the court could deny Lock Realty's request for these costs in their entirety, *see* <u>Billings v. Cape Cod Child Dev.</u>

Program, Inc., 270 F.Supp.2d 175, 178 n. 3 (D. Mass. 2003), or it could reduce the amount by a percentage it deems reasonable. The latter approach strikes a balance between the presumption in favor of awarding costs and Lock Realty's obligation to show that its costs are reasonable and necessary. Accordingly, the court will reduce the the bill of costs for copying, messenger courier services, Access Indiana, and the court's PACER system by 50% ($873.77), an amount it deems reasonable and necessary for fair compensation.

The computerized legal research entries on Lock Realty's invoice not only lack substantive detail from which the court might determine reasonableness and necessity, but are considered to be attorney's fees, and are not recoverable as "costs." Haroco v. American National Bank & Trust of Chicago, 38 F.3d 1429, 1440-1441 (7th Cir. 2004); McIlveen v. Stone Container Corp., 910 F.2d 1581, 1584 (7th Cir. 1990). The request for $3,651.27 for that research, accordingly, is denied.

Lock Realty contends that the expert witness fees billed by Baden, Gage & Schroeder, LLC Accounting Services for Jean Tipton's services and the related finance charge weren't excessive or unreasonable. The court agrees that expert testimony was required with respect to Lock's claim for future rent, but, as previously discussed, finds that the amount of money expended with respect to Ms. Tipton's expert opinion was excessive and unreasonable in light of the results obtained, see J.S. Nicol, Inc. v. Peking Handicraft, Inc., 2008 WL 4613752 (S.D. N.Y. Oct. 17, 2008), and unrecoverable under 28 U.S.C. § 1920. See Henkel v.

21

Chicago, St. Paul, Minn. & Omaha Ry, 284 U.S. 444, 446-447 (1932); Chicago College of Osteopathic Medicine v. George A. Fuller Co., 801 F.2d 908, 909-912 (7th Cir. 1986) (costs authorized under 28 U.S.C. § 1920 don't include expert witness fees unless the expert is court-appointed); Adams v. Carlson, 521 F.2d 168, 172 (7th Cir 1975) ("Where, as here, the witnesses involved are expert witnesses, the prevailing party can recover only the statutory amounts prescribed in 28 U.S.C. § 1821 and not additional expert witness fees.").

Mr. Wesp's "consultation fee" also is excessive under 28 U.S.C. § 1821. Lock Realty contends that it had to pay Mr. Wesp a consulting fee to appear at trial because he's no longer employed by Lock Realty. That may well be, but Mr. Wesp testified as a fact witness, not an expert, and the rate billed for his services ($1,500.00) and travel time ($750.00) exceeds that recoverable for a fact witness. 28 U.S.C. § 1821 entitles witnesses to a modest attendance fee (currently $40.00 per day), mileage, and subsistence. The court, accordingly, reduces Lock Realty's witness fee request for Mr. Wesp's services from $2,270.00 to $60.00 (the one day witness fee allowed under 28 U.S.C. 1821(b), plus $20.00 for subsistence costs). Lock Realty didn't provide Mr. Wesp's mileage or seek reimbursement for that expense, so the court awards no compensation for travel.

Lock Realty sought reimbursement for a variety of other costs (the district court filing fee, injunction bond premium, transcript fees, title searches, and office supplies) totaling $3,046.19. The defendants didn't object to those costs, so the court grants Lock Realty's request for reimbursement of those expenses.

Lock Realty hasn't sufficiently demonstrated that all of the costs it seeks were allowable, reasonable and/or necessary to this litigation, so the bill of costs must be reduced as outlined above to achieve a reasonable result. The court awards Lock Realty a total of $4,756.14 in costs.

IV. CONCLUSION

In summary:

(1) The defendants' motion to strike paragraph 7 of Mr. Maher's affidavit [Doc. No. 318] is DENIED.

(2) Lock Realty's motion for attorneys' fees [Doc. No. 307] is GRANTED in part, and DENIED in part. The motion is DENIED to the extent Lock Realty seeks fees for legal services and costs which (1) were unrelated to the breach of lease claim (including services related to LRC Management, LLC, SAK, Lock Realty's continued operation of the nursing home facility, and the subsidiary issues that arose as a result of that operation), (2) were determined to be unreasonable and unnecessary given the results obtained, and (3) were inadequately explained or documented, and is GRANTED in all other respects, and Lock Realty is awarded $696,390.50 in attorney fees..

(3) Lock Realty's bill of cost [Doc. No. 306] is GRANTED in part, and DENIED in part. The motion is GRANTED with respect to costs which were unopposed (the filing fee paid on August 7, 2006 ($350.00); the injunction bond premium paid to Gibson Insurance Group on November 20, 2006

($2000.00); transcript fees ($261.19), title searches performed by Middletown Title Agency ($345.00) and Meridian Title Corporation ($75.00), and office supplies ($15.00 for six spiral binders)); and DENIED with respect to the costs incurred for matters unrelated to this litigation ($2,750.20), the expert witness fee ($7,600.10), and the related finance charge ($50.92); and the cost of computerized legal research ($3,651.27). Lock Realty's request for witness fees for Mr. Wesp's services is REDUCED to $60.00, in accordance with 28 U.S.C. §§ 1821 and 1920(3); and the costs for copying, messenger courier services, Access Indiana and PACER fees is REDUCED by $873.77 (50% of the amounts claimed) to reflect the reasonable cost of those items and provide fair compensation to the prevailing party. Lock is awarded a total of $4,756.14 in costs.

SO ORDERED.

ENTERED:    October 3, 2011


                                    /s/ Robert L. Miller, Jr.
                                   Judge
                                   United States District Court